UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORTHOPEDICS AND SPORTS MEDICINE INSTITUTE, on behalf of PATIENT SZ,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>BLUE CROSS BLUE SHIELD OF ALABAMA, and VF CORPORATION MEDICAL EXPENSE REIMBURSEMENT PLAN,<br><br>　　　　　Defendant. | Case No. |

## **COMPLAINT**

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Advanced Orthopedics and Sports Medicine Institute ("Advanced Orthopedics" or "Plaintiff") brings this action against Blue Cross Blue Shield of Alabama ("BCBSAL"), and VF Corporation Medical Expense Reimbursement Plan (the "Plan Defendant") (together, "Defendants").

1. This is an action concerning Defendants' under-reimbursement of Advanced Orthopedics for specialized spinal surgery procedures.

2. BCBSAL was the claims administrator of the Plan Defendant, a self-funded ERISA plan under which Plaintiff's patient, SZ, was a plan participant.

3. Plaintiff was an out-of-network provider, meaning that its surgeon did not participate in BCBSAL's network or the network of BCBSAL's host plan, Horizon.

4. Patient SZ was diagnosed with substantial cervical disc herniation shown on an MRI at the C-6 and C-7 regions and C-7 radiculopathy, with very severe pain.

5. Grigory Goldberg, M.D., a surgeon associated with Plaintiff, determined that surgical intervention was medically necessary. Dr. Goldberg, assisted by Timothy Dowse, PA, performed several spinal surgical procedures including a cervical discectomy, and a cervical fusion.

6. After these surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendants for a total amount of $174,766.98. Defendants reimbursed Plaintiff only $402.80, leaving an unreimbursed amount of $174,364.18, for which Patient SZ remains liable. Defendants paid less than 1% of the total billed amount.

## JURISDICTION

7. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction). The Court also has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a) and (c) (diversity). The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

9. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) BCBSAL resides, is found, has an agent (Horizon), and transacts business in the District of New Jersey, and (b) the Plan Defendant transacts business in the District of New Jersey by insuring individuals in the State (including the Patient) who are plan participants and beneficiaries of its Plan.

10. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or where she alleges that the

violation of ERISA occurred.  Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## PARTIES

11.     Plaintiff Advanced Orthopedics and Sports Medicine Institute is a professional practice orthopedics group.  Dr. Goldberg, a surgeon associated with Plaintiff, received his medical degree from SUNY Downstate Medical School, where he also completed his residency in orthopedic surgery at Thomas Jefferson University Hospital in Philadelphia. He completed a spine surgery fellowship at the Leatherman Spine Center and a total joint arthroplasty fellowship at Thomas Jefferson University Hospital. Plaintiff's principal office is in Freehold, New Jersey.

12.     Defendant Blue Cross Blue Shield of Alabama is a health care insurance company. It is the claims administrator for the Plan Defendant. Its principal place of business is Birmingham, Alabama.

13.     Plan Defendant VF Corporation Medical Expense Reimbursement Plan is a self-funded ERISA Plan, meaning that it pays the healthcare liabilities for its plan participants and beneficiaries.  Its principal place of business is Denver, Colorado.

## FACTUAL ALLEGATIONS

14.     After performing the spinal surgery on July 12, 2016, Plaintiff submitted an invoice on a CMS-1500 form for Dr. Goldberg as Defendants required.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 22551 | $64,894.98 | $0.00 ($2,942.88 applied to deductible) |
| 22851 | $18,872.00 | $0.00 ($1,252.43 applied to deductible) |
| 22845 | $30,000.00 | $402.80 ($26.18 applied to deductible) |
| 20936 | $2,175.00 | $0.00 |

| | | |
|---|---|---|
| 20931 | $1,942.00 | $0.00 |
| **Total** | **$117,883.98** | **$402.80 ($4,221.49 applied to deductible)** |

CPT code 22551 is arthrodesis (spinal fusion). CPT code 22851 is intervertebral biomechanical device. CPT code 22845 is spinal instrumentation procedures. CPT code 20936 is disc material removed during a discectomy. CPT code 20931 is implant procedures.

15. Of the total billed amount of $117,883.98, Defendant paid $402.80, leaving an unpaid amount of $117,481.18, which was the financial responsibility of the Patient.

16. Defendant BCBSAL, in its Explanation of Benefit Payments form ("EOB"), stated that the "submitted charge exceeds the eligible charge which is the maximum allowance for this service." The EOB did not explain what the "eligible charge" was, or the "maximum allowance."

17. Plaintiff submitted an invoice on a CMS-1500 form for Dowse as assistant surgeon as Defendant required. The billed amounts, paid amounts, and CPT codes were as follows:

| **CPT** | **Billed Amount** | **Paid Amount** |
|---|---|---|
| 22551-AS | $32,447.00 | $0.00 ($409.87 applied to deductible) |
| 22851-AS | $9,436.00 | $0.00 ($200.39 applied to deductible) |
| 22845-AS | $15,000.00 | $0.00 $111.00 applied to deductible) |
| **Total** | **$56,883.00** | **$0.00 ($782.86 applied to deductible)** |

18. Defendant BCBSAL, in its Explanation of Benefit Payments form ("EOB"), stated that the "submitted charge exceeds the eligible charge which is the maximum allowance for this service." The EOB did not explain what the "eligible charge" was or the "maximum allowance."

19. In-patient surgical procedures are covered benefits under the Plan.

20. Assistant surgeons are covered under the Plan.

21. Plaintiff was an out-of-area provider to Defendant BCBSAL because under its licensing agreement with the Blue Cross Blue Shield Association it was prohibited from

contracting with providers outside the state of Alabama and contiguous counties. Consequently, Defendant BCBSAL relied on Horizon, the BCBS licensee in the state of New Jersey, for its payment arrangements with providers in the State.

22. Under the Plan, out-of-area out-of-network providers are reimbursed based on the Host (that is, Horizon) BCBS's out-of-network "local payment," "the pricing arrangements required by applicable state law," or billed charges. The Plan does not define, explain, or describe the out-of-network local payment.

22. Plaintiff filed an appeal for Dr. Goldberg's claim on January 11, 2017. Plaintiff filed an appeal for Dowse's claim on January 12, 2017.

24. Defendant BCBSAL denied these appeals on December 7, 2017. It stated: "We have completed the appeal of this case and determined that the claim numbers in question . . . were processed and paid correctly . . . at 60 percent of the allowed amount."

25. The reimbursement was processed erroneously and, therefore, in violation of ERISA. Defendant BCBSAL applied the Plan Defendant's out-of-network rate, rather than the out-of-area rate.

26. The Plan Defendant's out-of-network rate is 60% of the "Allowed Amount," defined as: (a) the negotiated rate payable to in-network providers; (b) the average charge for care in the area; (c) the charge or average charge for the same or similar service; (d) pricing data; (e) the relative complexity of the service; (f) the in-network rate in Alabama; (g) applicable state healthcare factors; and (h) the rate of inflation. For (a)-(e) the data come from the Host Plan, Horizon.

27. The Plan Defendant's out-of-area rate, as alleged above, is different. It is calculated based on the Host Plan's out-of-network's local payment, the pricing arrangements required under

state law, or billed charges.  There is no further 40% discount taken on this rate because it is not the "out-of-network rate."

28. Plaintiff's appeal letter requested the complete methodology used to make what ERISA labels the adverse benefit determination in this case.  This would include the sources of the methodology, not simply a brief description.  Missing from BCBSAL's appeal denial letter was on what the "Allowed Amount" was based.

29. Missing from BCBSAL's EOBs were:  (a) the definition of the "eligible charge"; (b) the definition of the "maximum allowance";  (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 40% or some other percentage; and (e) why certain procedure codes were not paid at all, which would suggest that BCBSAL based these denials on bundling or another undisclosed rule.

30. The Plan has one required level of appeal.  Plaintiff exhausted it through its appeals.

31. When Defendants denied Plaintiff's claims, they did not do so pursuant to the rules promulgated under ERISA.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

32. Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

33. Defendants BCBSAL and the Plan Defendant did not provide (a) "eligible charge"; (b) the definition of the "maximum allowance"; (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 60% or some other percentage; and (e) why certain procedure codes were not paid at all, in its appeal denial letters or the EOBs.

34. Even when Plaintiff requested these documents, other than the SPD, Defendants refused to provide them, in direct violation of ERISA.

35. Under ERISA, when a claims administrator and the Plan fail to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

36. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled

to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

37. By failing to reimburse Plaintiff in accordance with the terms of the Plan, Defendant violated ERISA, 29 C.F.R. § 2560.503-1(g).

38. Defendant also violated ERISA when it failed to disclose the basis of its (a) "eligible charge"; (b) the definition of the "maximum allowance"; (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 60% or some other percentage; and (e) why certain procedure codes were not paid at all, so that Plaintiff could meaningfully appeal it. As such, and because it is therefore unlikely that these are contained in the administrative record, this record is expected to be incomplete and inadequate.

39. Plaintiff received a Designation of Authorized Representative from Patient SZ . It stated, in relevant part:

> I hereby convey . . .to the Designated Authorized Representative [Advanced Orthopedics and Sports Medicine Institute] to the fullest extent permissible under the law and under any applicable employee group health plan(s) . . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) and to the full extent per permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including but not limited to . . . any administrative and judicial actions. . . . . by the Designated Authorized Representative to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, to bring suit by the Designated Authorized Representative against such liable party or employee health plan in my name with derivative standing but at such Designated Authorized Representative's expenses.

40. ERISA allows a Designated Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

### The Fiduciary Duties of the Plan Defendant

41. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and beneficiaries like Patient SZ. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

42. In this case, the Plan Defendant breached its fiduciary duties under ERISA by permitting BCBSAL to make coverage decisions for spinal surgery for Patient SZ, a participant of the Plan, in violation of the Plan's SPD.

### COUNT I

### CLAIM AGAINST DEFENDANT BCBSAL FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

43. The Plan Defendant delegated to its claims administrator BCBSAL, "discretionary responsibility and authority to determine claims under the plan, to construe, interpret, and administer the plan, and to perform every other act necessary or appropriate in connection with our provision of benefits and/or administrative services under the plan."

44. Defendant BCBSAL was obligated to pay benefits to the Defendant Plan participants and beneficiaries in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA.

45. Defendant BCBSAL violated its legal obligations under this ERISA-governed Plan when it under-reimbursed Plaintiff for the spinal surgeries provided to Patient SZ by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

46. Plaintiff submitted invoices for $174,766.98.

47. Defendant BCBSAL determined that the paid amount was $402.80, leaving an unreimbursed amount of $174,364.18. Defendant thereby reimbursed less than 1% of the total amount.

48. Plaintiff seeks unpaid benefits and statutory interest back to the dates Plaintiff's claims were originally submitted to Defendant BCBSAL. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant BCBSAL.

## COUNT II

### CLAIM AGAINST VF CORPORATION MEDICAL EXPENSE REIMBURSEMENT PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B)

49. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), it must discharge its duties solely in the interest of Plan participants and beneficiaries.

50. The Plan Defendant must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

51. An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. The Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to BCBSAL and be free of its fiduciary responsibilities under ERISA.

52. As a fiduciary, the Plan Defendant owed Plaintiff a duty of loyalty and the avoidance of self-dealing. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

53. The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrator, BCBSAL, was

reimbursing Plaintiff according to the Plan Defendant's SPD. Instead, BCBSAL under-reimbursed Plaintiff for the surgeries. These surgeries were covered under the terms of the SPD.

54. Specifically, the Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that BCBSAL reimbursed Plaintiff on behalf of its participant according to the Plan Defendant's SPD.

55. The Plan Defendant failed to monitor and correct BCBSAL's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

56. As a self-funded Plan, the Plan Defendant saved the under-reimbursed amount by allowing its claims administrator to pay Plaintiff in breach of the Plan's SPD, the Plan Defendant's own fiduciary duties, and in violation of ERISA.

57. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d) Awarding prejudgment interest; and

(e) Granting such other and further relief as is just and proper.

Dated: April 2, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff Advanced
Orthopedics and Sports Medicine Institute,
on behalf of Patient SZ