## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADVANCED ORTHOPEDICS AND SPORTS MEDICINE INSTITUTE, on behalf of PATIENT SZ,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ALABAMA, VF CORPORATION, and VF CORPORATION MEDICAL EXPENSE REIMBURSEMENT PLAN,<br><br>Defendants. | Case No. 3:20-cv-03545-BRM-TJB |

## <u>AMENDED COMPLAINT</u>

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Advanced Orthopedics and Sports Medicine Institute, on behalf on Patient SZ ("Advanced Orthopedics" or "Plaintiff") brings this action against Blue Cross Blue Shield of Alabama ("BCBSAL"), VF Corporation ("VF Corporation," or the "Plan Administrator"), and VF Corporation Medical Expense Reimbursement Plan (the "Plan Defendant") (together, "Defendants").

1.    This is an action concerning Defendants' under-reimbursement of Advanced Orthopedics for specialized spinal surgery procedures.

2.    BCBSAL was the claims administrator of the Plan Defendant, a self-funded ERISA plan under which Plaintiff's patient, SZ, was a plan participant.

3.    Plaintiff was an out-of-network provider, meaning that the surgeon associated with Plaintiff, Grigory Goldberg, M.D., did not participate in BCBSAL's network or the network of BCBSAL's Host Plan, Horizon.

1

4.      Patient SZ presented with severe neck pain and progressive neurological deficits. An MRI revealed a severe cervical disc herniation at C-6 through C-7 and C-7 radiculopathy.

5.      Dr. Goldberg determined that surgical intervention was medically necessary.  Dr. Goldberg, assisted by Timothy Dowse, PA, performed several spinal surgical procedures including a cervical discectomy, and a cervical fusion.

6.      After these surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendants for a total amount of $174,766.98.  Defendants reimbursed Plaintiff only $402.80, leaving an unreimbursed amount of $174,364.18, for which Patient SZ remains liable. Defendants paid less than 1% of the total billed amount.

## JURISDICTION

7.      The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

8.      The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

9.      Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) BCBSAL resides, is found, has an agent (Horizon), and transacts business in the District of New Jersey, and (b) the Plan Defendant transacts business in the District of New Jersey by insuring individuals in the State (including the Patient) who are plan participants and beneficiaries of its Plan.

10.     Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or where she alleges that the

violation of ERISA occurred.  Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## PARTIES

11.    Plaintiff Advanced Orthopedics and Sports Medicine Institute is a professional practice orthopedics group.  Dr. Goldberg, a surgeon associated with Plaintiff, received his medical degree from SUNY Downstate Medical School, where he also completed his residency in orthopedic surgery at Thomas Jefferson University Hospital in Philadelphia. He completed a spine surgery fellowship at the Leatherman Spine Center and a total joint arthroplasty fellowship at Thomas Jefferson University Hospital. Plaintiff's principal office is in Freehold, New Jersey.

12.    Defendant Blue Cross Blue Shield of Alabama is a health care insurance company. It is the claims administrator for the Plan Defendant. Its principal place of business is Birmingham, Alabama.

13.    Plan Defendant VF Corporation Medical Expense Reimbursement Plan is a self-funded ERISA Plan, meaning that it pays the healthcare liabilities for its plan participants and beneficiaries.  Its principal place of business is Denver, Colorado.

14.    Plan Administrator VF Corporation is an apparel and footwear company.  Its named brands include The North Face and The Timberland Company, among others.  Its principal place of business is Denver, Colorado.

## FACTUAL ALLEGATIONS

### A.    The Blue Card Program

15.    The Blue Card Program and National Accounts System, in which each Blue Cross Blue Shield company must participate, including Defendant BCBSAL, was the direct result of the practice of all the BCBS licensees, under the direction of the Blue Cross Blue Shield Association,

to engage in exclusive geographical market allocation.  Under this practice, each BCBS licensee was given a specific geographic market to offer health insurance. This practice continues today.

16.    Plaintiff was required to submit its invoices to Horizon.  Horizon's allocated exclusive market is the State of New Jersey.  Accordingly, it cannot offer health insurance or contract with providers in any other state, although it may contract with providers in contiguous counties.

17.    BCBSAL's allocated exclusive market is the state of Alabama. It cannot offer health insurance or contract with providers in any adjacent state,  although it may contract with providers in contiguous counties.  It cannot offer health insurance in the State of New Jersey.

18.    These restrictions insulate each BCBS licensee from competition from other licensees in each of their respective exclusive geographic market areas.

19.    As part of its mandatory agreement to participate in the Blue Card Program, Defendant BCBSAL commits that other than in contiguous counties, it will not contract, solicit or negotiate with providers outside of its allocated geographical market area. In this case, because the Plan Defendant's participant sought care from a New Jersey-based provider, the provider must send the bill to Horizon through the BCBS Blue Card system.

20.    To make this work, the BCBSA created Home and Host Plans.

21.    The Blue Cross Blue Shield licensee in the exclusive geographical area through which the member is enrolled (in this case Defendant BCBSAL) is the Home Plan. The Blue Cross Blue Shield insurer located in the exclusive geographical area where the service is provided (in this case Horizon) is referred to as the Host Plan.

B.    <u>The July 12, 2016, Spinal Surgery</u>

22.    After performing the spinal surgery on July 12, 2016, Plaintiff submitted an invoice on a CMS-1500 form for Dr. Goldberg as Defendants required.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 22551 | $64,894.98 | $0.00 ($2,942.88 applied to deductible) |
| 22851 | $18,872.00 | $0.00 ($1,252.43 applied to deductible) |
| 22845 | $30,000.00 | $402.80 ($26.18 applied to deductible) |
| 20936 | $2,175.00 | $0.00 |
| 20931 | $1,942.00 | $0.00 |
| **Total** | **$117,883.98** | **$402.80 ($4,221.49 applied to deductible)** |

CPT code 22551 is arthrodesis (spinal fusion). CPT code 22851 is intervertebral biomechanical device. CPT code 22845 is spinal instrumentation procedures. CPT code 20936 is disc material removed during a discectomy.  CPT code 20931 is implant procedures.

23.    Of the total billed amount of $117,883.98, Defendant paid $402.80, leaving an unpaid amount of $117,481.18, which was the financial responsibility of the Patient.

24.    Defendant BCBSAL, in its Explanation of Benefit Payments form ("EOB"), stated that the "submitted charge exceeds the eligible charge which is the maximum allowance for this service."  The EOB did not explain what the "eligible charge" was, or the "maximum allowance."

25.    Plaintiff submitted an invoice on a CMS-1500 form for Dowse as assistant surgeon as Defendant required.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 22551-AS | $32,447.00 | $0.00 ($409.87 applied to deductible) |
| 22851-AS | $9,436.00 | $0.00 ($200.39 applied to deductible) |

| | | |
|---|---|---|
| 22845-AS | $15,000.00 | $0.00 ($111.00 applied to deductible) |
| **Total** | **$56,883.00** | **$0.00 ($782.86 applied to deductible)** |

26.    Defendant BCBSAL, in its Explanation of Benefit Payments form ("EOB"), stated that the "submitted charge exceeds the eligible charge which is the maximum allowance for this service."  The EOB did not explain what the "eligible charge" was or the "maximum allowance."

27.    In-patient surgical procedures are covered benefits under the Plan.

28.    Surgical procedures performed by assistant surgeons are covered under the Plan.

29.    Plaintiff was an out-of-area provider to Defendant BCBSAL because under its licensing agreement with the BCBSA it was prohibited from contracting with providers outside the state of Alabama and contiguous counties. Consequently, Defendant BCBSAL relied on Horizon, the BCBS licensee in the state of New Jersey, for its payment arrangements with providers in the State of New Jersey.

30.    Under the Plan, out-of-area out-of-network providers are reimbursed based on the Host (that is, Horizon) BCBS's out-of-network "local payment," "the pricing arrangements required by applicable state law," or billed charges.  The Plan does not define, explain, or describe the out-of-network local payment.

31.    Plaintiff filed an appeal for Dr. Goldberg's claim on January 11, 2017. Plaintiff filed an appeal for Dowse's claim on January 12, 2017.

32.    Defendant BCBSAL denied these appeals on December 7, 2017.  It stated: "We have completed the appeal of this case and determined that the claim numbers in question  . . . were processed and paid correctly . . . at 60 percent of the allowed amount."

33.    The reimbursement was processed erroneously and, therefore, in violation of ERISA.  Defendant BCBSAL did not apply the Plan Defendant's out-of-area rate.

34.    The Plan Defendant's out-of-network rate is 60% of the "Allowed Amount," defined as: (a) the negotiated rate payable to in-network providers; (b) the average charge for care in the area; (c) the charge or average charge for the same or similar service; (d) pricing data; (e) the relative complexity of the service; (f) the in-network rate in Alabama; (g) applicable state healthcare factors; and (h) the rate of inflation.  For (a)-(e) the data come from the Host Plan, Horizon.

35.    The Plan Defendant's out-of-area rate, as alleged above, is different.  It is calculated based on the Host Plan's out-of-network's local payment, the pricing arrangements required under state law, or billed charges.  There is no further 40% discount taken on this rate because it is not the "out-of-network rate."

36.    Plaintiff's appeal letter requested the complete methodology used to make what ERISA calls the adverse benefit determination in this case.  This includes the sources of the methodology, not simply a brief description.  Missing from BCBSAL's appeal denial letter was on what the "Allowed Amount" was based.

37.    Missing from BCBSAL's EOBs were:  (a) the definition of the "eligible charge"; (b) the definition of the "maximum allowance";  (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 40% or some other percentage; and (e) why certain procedure codes were not paid at all, which would suggest that BCBSAL based these denials on bundling or another undisclosed rule.

38.    The Plan has one required level of appeal.  Plaintiff exhausted it through its appeals.

39.    When Defendants denied Plaintiff's claims, they did not do so pursuant to the rules promulgated under ERISA.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

40.    Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

41.    Defendants did not provide (a) "eligible charge"; (b) the definition of the "maximum allowance"; (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 60% or some other percentage; and (e) why certain procedure codes were not paid at all, in its appeal denial letters or the EOBs.

42.     Even when Plaintiff requested these documents, other than the SPD, Defendants refused to provide them, in direct violation of ERISA.

43.     Under ERISA, when a claims administrator and the Plan Administrator fail to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

44.     Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

45.     By failing to reimburse Plaintiff in accordance with the terms of the Plan, Defendants violated ERISA, 29 C.F.R. § 2560.503-1(g).

46.     Defendants also violated ERISA when they failed to disclose the basis of its (a) "eligible charge"; (b) the definition of the "maximum allowance"; (c) whether Plaintiff's reimbursements were based on the out-of-network methodology, the out-of-area methodology, or something else entirely; (d) whether Plaintiff's reimbursements were discounted by 60% or some other percentage; and (e) why certain procedure codes were not paid at all, so that Plaintiff could meaningfully appeal it.  As such, and because it is therefore unlikely that these are contained in the administrative record, this record is expected to be incomplete and inadequate.

47.     Plaintiff received a Designation of Authorized Representative from Patient SZ .  It stated, in relevant part:

I hereby convey . . .to the Designated Authorized Representative [Advanced Orthopedics and Sports Medicine Institute] to the fullest extent permissible under the law and under any applicable employee group health plan(s) . . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) and to the full extent per permissible under the law to claim or lien

such medical benefits, settlement, insurance reimbursement and any applicable remedies, including but not limited to . . . any administrative and judicial actions. . . . by the Designated Authorized Representative to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, to bring suit by the Designated Authorized Representative against such liable party or employee health plan in my name with derivative standing but at such Designated Authorized Representative's expenses.

48.     ERISA allows a Designated Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

**C.     The Fiduciary Duties of the Plan Administrator and Claims Administrator**

49.     The Plan Administrator and the Claims Administrator are fiduciaries, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) they must discharge their duties solely in the interest of Plan participants and beneficiaries like Patient SZ.

50.     The Plan Administrator cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

51.     Nor can the Plan Administrator, consistent with ERISA, delegate all of its fiduciary duty to another entity such as a claims administrator.

52.     The Plan Administrator breached its fiduciary duties under ERISA by permitting Defendant BCBSAL to make coverage decisions for spinal surgery for Patient SZ, a participant of the Plan, in violation of the Plan's SPD.

53.     The Claims Administrator, BCBSAL, made coverage decisions for spinal surgery in violation of the Plan's SPD.

**COUNT I**

**CLAIM AGAINST DEFENDANT BCBSAL FOR UNPAID BENEFITS
UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA**

54.     The Plan Administrator delegated to its claims administrator BCBSAL, "discretionary responsibility and authority to determine claims under the plan, to construe, interpret, and

10

administer the plan, and to perform every other act necessary or appropriate in connection with our provision of benefits and/or administrative services under the plan."

55.    Defendant BCBSAL was obligated to pay benefits to Plan participants and beneficiaries, including Patient SZ, in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA.

56.    Defendant BCBSAL violated its legal obligations under this ERISA-governed Plan when it under-reimbursed Plaintiff for the spinal surgeries provided to Patient SZ by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

57.    Plaintiff submitted invoices for $174,766.98.

58.    Defendant BCBSAL determined that the paid amount was $402.80, leaving an unreimbursed amount of $174,364.18. Defendant thereby reimbursed less than 1% of the total amount.

59.    Plaintiff seeks unpaid benefits and statutory interest back to the dates Plaintiff's claims were originally submitted to Defendant BCBSAL. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant BCBSAL.

## COUNT II

### CLAIM AGAINST DEFENDANT BCBSAL FOR VIOLATION OF ERISA 404 § (A)(1)(B)

60.    Defendant BCBSAL was the Claims Administrator of the Plan and was designated as a fiduciary by the Plan Administrator. Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B), BCBSAL must discharge its duties solely in the interest of Plan participants and Beneficiaries.

61.     As a fiduciary, Defendant BCBSAL must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

62.     As a fiduciary, the Defendant owed its member, the Patient, a duty of loyalty and the avoidance of self-dealing.  It could not make claims determinations that violated the terms of the Plan's SPD.

63.     Defendant BCBSAL breached its duty of loyalty and violated the fiduciary responsibilities it owed Patient SZ and therefore Plaintiff by failing to reimburse Plaintiff according to the Plan's SPD. Instead, BCBSAL under-reimbursed Plaintiff.

64.     Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

## COUNT III

### CLAIM AGAINST DEFENDANT VF CORPORATION
### FOR VIOLATION OF ERISA 404 § (A)(1)(B)

65.     The Plan Administrator VF Corporation was a fiduciary under the Plan pursuant to ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) and must discharge its duties solely in the interest of Plan participants and Beneficiaries.

66.     As a fiduciary, the Plan Administrator must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

67.     As a fiduciary, the Plan Administrator owed Patient SZ, a Plan participant a duty of loyalty and the avoidance of self-dealing.

68.     The Plan Administrator cannot fully delegate its fiduciary responsibilities to the Claims Administrator and be free of its fiduciary responsibilities under ERISA.

69.     The Plan Administrator cannot permit the Claims Administrator to make claims determinations that violated the terms of the plan's SPD.

70.     The Plan Administrator failed to monitor and correct Defendant BCBSAL's misconduct in under-reimbursing Plaintiff and in violating its fiduciary duty, despite the Plan Administrator's continuing fiduciary duty to do so. It thereby violated ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B).

71.     Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

## COUNT IV

### CLAIM AGAINST VF CORPORATION MEDICAL EXPENSE REIMBURSEMENT PLAN FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

72.     As a self-funded Plan, the Plan Defendant saved the under-reimbursed amount by allowing its Plan Administrator and Claims Administrator to under-reimburse Plaintiff in breach of the Plan's SPD, in violation of the Plan Administrator's and Claims Administrator's fiduciary duties, and in violation of ERISA.

73.     The Plan Defendant is obligated to pay benefits to the Plan participants and beneficiaries, including the Patient in accordance with the terms of the Plan Defendant's SPD, and in accordance with ERISA.

74.     The Plan Defendant violated its legal obligations under the Plan when Plaintiff was under-reimbursed for surgery provided to Patient SZ, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. 1132(a)(1)(B).

75.     Plaintiff submitted an invoice to Defendant Horizon for $113,256.00.

76.     Defendant Anthem reimbursed Plaintiff $7,618.73, leaving an unreimbursed amount of $105,637.27.

77.   The Plan Defendant violated ERISA § 502(a)(l)(B), 29 U.S.C. 1132(a)(1)(B).  The Plan Defendant is subject to liability under this section pursuant to 29 U.S.C. 1132(d).

78.   Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Horizon. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a)   Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

(b)   Ordering declaratory relief, surcharge, profits, and removal of the Plan Administrator and Claims Administrator for breach of its fiduciary duty and loyalty;

(c)   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d)   Awarding prejudgment interest; and

(e)   Granting such other and further relief as is just and proper.


Dated: August 17, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

*Attorneys for Plaintiff Advanced*
*Orthopedics and Sports Medicine Institute,*
*on behalf of Patient SZ*