**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ADVANCED ORTHOPEDICS AND SPORTS MEDICINE INSTITUTE, on behalf of PATIENT SZ, <br><br> Plaintiff, <br><br> v. <br><br> BLUE CROSS BLUE SHIELD OF ALABAMA, VF CORPORATION, and VF CORPORATION MEDICAL EXPENSE REIMBURSEMENT PLAN, <br><br> Defendants. | Case No. 3:20-cv-03545 (BRM) (TJB) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Blue Cross Blue Shield of Alabama ("BCBSAL") seeking to dismiss Plaintiff Advanced Orthopedics and Sports Medicine Institute's ("Advanced Orthopedics") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Advanced Orthopedics opposed the motion. (ECF No. 18.) BCBSAL filed a reply. (ECF No. 20.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, BCBSAL's Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most

favorable to" Advanced Orthopedics, the Plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Advanced Orthopedics is a professional practice orthopedics group. (ECF No. 5 ¶ 11.) Advanced Orthopedics brings this lawsuit on behalf of its patient, SZ, for whom Advanced Orthopedics' surgeon performed a spinal surgery on July 12, 2016, against BCBSAL, VF Corporation, and VF Corporation Medical Expense Reimbursement Plan (the "Plan") (collectively, "Defendants"). (ECF No. 12-1 at 7.) BCBSAL is the claims administrator of the Plan, of which SZ is a participant. (ECF No. 5 ¶ 2.) The Plan is self-funded by SZ's employer, VF Corporation, and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.*; ECF No. 12-1 at 7.) Advanced Orthopedics is an out-of-network provider that does not participate in a preferred provider network with BCBSAL. (ECF No. 12-1 at 7.) Advanced Orthopedics alleges Defendants under-reimbursed its spinal surgery services for SZ. (ECF No. 5 ¶ 1.)

Advanced Orthopedics allegedly received a Designation of Authorized Representative ("DAR") from SZ, which provides:

> I hereby convey . . . to the Designated Authorized Representative [Advanced Orthopedics] to the fullest extent permissible under the law and under any applicable employee group health plan(s) . . . any claim, cause of action or other right I may have to such group health plans . . . with respect to medical expenses incurred as a result of the medical services I received from the providers(s) and to the full extent per permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including but not limited to . . . any administrative and judicial actions. . . . by the Designated Authorized Representative to

> pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, to bring suit by the Designated Authorized Representative against such liable party or employee health plan in my name with derivative standing but at such Designated Authorized Representative's expenses.

(*Id.* ¶ 47.) With this Designation, Advanced Orthopedics insists it may bring ERISA claims derivatively, as an assignee of SZ. (ECF No. 18 at 8.)

However, under the sub-heading "No Assignment," the Plan provides, in relevant part:

> [R]egardless of who files a claim for benefits under the plan, we will not honor an assignment by you of payment of your claim to anyone. What this means is that we will pay covered benefits to you or your in-network provider (as required by our contract with your in-network provider)—even if you have assigned payment of your claim to someone else. When we pay you or your in-network provider, this completes our obligation to you under the plan.

(*Id.*; ECF No. 12-3 at 3–4.) The parties dispute whether this provision (the "Disputed Provision") contains an anti-assignment clause that prevents Advanced Orthopedics from establishing derivative ERISA standing here. (ECF No. 18 at 8.)

On April 2, 2020, Advanced Orthopedics filed a Complaint, asserting the following claims on behalf of SZ: (1) a claim for unpaid benefits under ERISA § 502(a)(1)(B) against BCBSAL, and (2) a claim for violation of fiduciary duties of loyalty and care under ERISA § 404(a)(1)(B) against the Plan. (ECF No. 1 at 9-10.) On August 17, 2020, Advanced Orthopedics filed an Amended Complaint, adding VF Corporation as a defendant and asserting the following claims on behalf of SZ: (1) a claim for unpaid benefits under ERISA § 502(a)(1)(B) against BCBSAL (Count I); (2) a claim for violation of fiduciary duties of loyalty and care under ERISA § 404(a)(1)(B) against BCBSAL (Count II); (3) a claim for violation of fiduciary duties of loyalty and care under ERISA § 404(a)(1)(B) against VF Corporation (Count III); and (4) a claim for unpaid benefits under ERISA § 502(a)(1)(B) against the Plan (Count IV). (ECF No. 5 at 10-13.) Advanced

Orthopedics seeks (1) unpaid benefits, statutory interest, attorneys' fees, costs, prejudgment interest, and other appropriate relief for Count I and Count IV, and (2) declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties for Count II and Count III under ERISA § 502(a)(3). (*Id*. ¶¶ 59, 64, 71, 78.)

On October 29, 2020, BCBSAL filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12.) BCBSAL maintains Count I and Count II of the Amended Complaint, which are the only Counts asserted against BCBSAL, should be dismissed. (ECF No. 12-1 at 8.) On November 23, 2020, Advanced Orthopedics opposed BCBSAL's motion. (ECF No. 18.) On January 12, 2021, BCBSAL filed a reply. (ECF No. 20.)

## II. LEGAL STANDARD

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint

allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III.  DECISION

### A.  The Court Denies BCBSAL's Motion to Dismiss for Lack of ERISA Standing

BCBSAL contends Advanced Orthopedics lacks the requisite standing to pursue its ERISA claims, because the DAR form cannot supersede the Plan's anti-assignment clause in the Disputed Provision that prohibits any and all types of assignments of claims for benefits. (ECF 12-1 at 12.) BCBSAL maintains nothing in the Amended Complaint suggests a course of conduct between the parties that would sufficiently constitute a waiver of the anti-assignment clause. (*Id.* at 15.) BCBSAL asserts the Disputed Provision does not contain a spendthrift clause, which only pertains to ERISA pension and retirement plans, rather than employee welfare benefit plans at issue here. (ECF No. 20 at 7.) BCBSAL claims the anti-assignment clause of another ERISA plan in *Somerset*, which had the same anti-assignment language with the Disputed Provision, was found unambiguous and enforceable. (*Id.* at 10 (citing *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs.*, Civ. A. No. 19-8783, 2020 U.S. Dist. LEXIS 73174 (D.N.J. April 27, 2020)).)

Advanced Orthopedics alleges it has ERISA standing on the basis of the DAR from SZ. (ECF No. 18 at 13 n.3.) Advanced Orthopedics contends the Disputed Provision is not an anti-assignment clause, but a spendthrift clause. (*Id.* at 8.) Advanced Orthopedics explains the Disputed Provision is not a legal restriction placed on a plan member's ability to transfer standing under ERISA, but a restriction on the rights of third parties to take an interest in a plan member's benefits. (*Id.*) Advanced Orthopedics adds the Disputed Provision says nothing about the assignment to an out-of-network provider. (*Id.*) Advanced Orthopedics argues the term "someone else" in the Disputed Provision could not be an out-of-network provider if the member assigned payment to an in-network provider; rather, the term refers to a third-party debtor of the member to whom the member might have assigned benefits of her insurance policy in return for payment of the debt.

(*Id.* at 9) Advanced Orthopedics maintains, even if the Disputed Provision is considered an anti-assignment clause, it is ambiguous and should not be construed against Advanced Orthopedics at this stage. (*Id.* at 9.) The Court declines to dismiss the Amended Complaint for lack of ERISA standing.

"Although, '[o]rdinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing,' whether a party has derivative standing to file an ERISA claim 'involves a merits-based determination,' such that a motion to dismiss for lack of ERISA standing . . . is 'properly filed under Rule 12(b)(6).'" *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 62 n.1 (3d Cir. 2019) (quoting *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015)).

> [T]he general standard for pleading derivative ERISA standing is fairly well settled: "[p]laintiffs will meet their burden of establishing ERISA standing if their [c]omplaint contains specific factual allegations to render plausible their claim that the [a]ssignments they received from the [p]lan [p]articipants conferred them with the right to receive the full benefits of that [p]lan."

*NJSR Surgical Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 522–23 (D.N.J. 2013) (citations omitted). Here, the parties do not dispute Advanced Orthopedics may establish ERISA standing with an assignment from SZ, based on the DAR form. (*See* ECF No. 12-1 at 12; ECF No. 18 at 10.) The disputed point on standing is whether the Disputed Provision contains an anti-assignment clause that prohibits a plan member from transferring standing under ERISA. The Court finds the Amended Complaint presents specific factual allegations that render plausible Advanced Orthopedics' assertion of ERISA standing.

### 1. The Disputed Provision Contains an Unambiguous Anti-Assignment Clause Applicable to an Out-of-Network Provider

The *Somerset* court found the plan language "we will not honor an assignment by you of payment of your claim to anyone," which also appears in the Disputed Provision, to be an "anti-

assignment clause[]" that is "not ambiguous," because its "plain language . . . clearly prohibits participants from giving providers . . . the right to receive any payments for medical services." *Somerset*, 2020 U.S. Dist. LEXIS 73174, at *11 (citing *Enlightened Sols., LLC v. United Behavioral Health*, Civ. A. No. 18-6672, 2018 WL 6381883, at *3, 5 (D.N.J. Dec. 4, 2018)). "[T]he terms of an unambiguous private contract must be enforced." *Id*. at *10 (citing *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)). Accordingly, the anti-assignment clause in *Somerset* meant the plaintiffs, who were out-of-network providers, "lack[ed] standing to assert claims by virtue of the [assignments] they obtained from patients who receive benefits through these plans." *Somerset*, 2020 U.S. Dist. LEXIS 73174, at *2, 15.

The sentence right after the anti-assignment clause in the Disputed Provision does not make it inapplicable to an out-of-network provider. The sentence explains the preceding anti-assignment clause "means" that BCBSAL "will pay covered benefits to" a plan member or its in-network provider, even if that plan member made an assignment "to someone else." (ECF No. 18 at 8.) The same sentence also appeared right after the anti-assignment clause in *Somerset*, Civ. A. No. 19-8783, ECF No. 28-2 at 23, but did not prevent the *Somerset* court from finding the clause unambiguous and applicable to an out-of-network provider. Consistent with *Somerset*, the Court discerns no reason why the term "someone else" in the sentence could not be an out-of-network provider. Advanced Orthopedics' argument that the term "could not be an out-of-network provider if the member assigned payment to an in-network provider" (ECF No. 18 at 9) is irrelevant. The term still does not address the situation where the member did not assign payment to an in-network provider.

Also, the Court need not ascertain whether the Dispute Provision contains a spendthrift

clause, because the issue here is whether it contains an anti-assignment clause. Even if the Disputed Provision contains a spendthrift clause, it does not preclude finding an anti-assignment clause in the same provision. A sentence in an ERISA plan could constitute both a spendthrift clause and an anti-assignment clause at the same time. *See Ward v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 643 F.3d 1331, 1334–35 (11th Cir. 2011) (finding that the "unambiguous command" in an ERISA plan "provid[ing] that no benefits will be 'subject in any manner to . . . assignment, nor to . . . other legal process for the debts'" constituted both an anti-assignment provision and a spendthrift provision that were enforceable).

Accordingly, the Court finds the Disputed Provision contains an unambiguous anti-assignment clause that could prevent Advanced Orthopedics from asserting ERISA standing. However, as explained below, the inquiry of Advanced Orthopedics' ERISA standing does not end with such a finding.

### 2. The Court Must Determine Whether BCBSAL Waived the Anti-Assignment Clause

"[T]he effect, or not, of such an anti-assignment provision . . . is a matter of contract interpretation, and, more importantly, it requires an assessment of the conduct of the parties." *Atl. Orthopaedic Assocs., LLC v. Blue Cross & Blue Shield of Tex.*, Civ. A. No. 15-1854, 2016 U.S. Dist. LEXIS 29360, at *10–11 (D.N.J. Mar. 7, 2016). "It has been held, for example, that a party can waive an anti-assignment provision via a 'written instrument, a course of dealing, or even passive conduct, *i.e.*, taking no action to invalidate the assignment vis-à-vis the assignee.'" *Id.* at *11 (citing *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, Civ. A. No. 06-0462, 2007 U.S. Dist. LEXIS 94056, 2007 WL 4570323, at *3 (D.N.J. Dec. 26, 2007)). Even an unambiguous anti-assignment clause can be waived. *See Shah v. Blue Cross Blue Shield of Ala.*, Civ. A. No. 17-700, 2017 U.S. Dist. LEXIS 154090, at *7 (D.N.J. Sept. 21, 2017) ("The

clear and unambiguous [a]nti-[a]ssignment [c]lause is valid and enforceable. Having found that the [a]nti-[a]ssignment [c]lause is valid and enforceable, the [c]ourt now turns to whether BCBSAL waived its right to enforce the [a]nti-[a]ssignment [c]lause."). Therefore, in the analysis of Advanced Orthopedics' ERISA standing, the Court must determine whether BCBSAL waived the anti-assignment clause in the Disputed Provision.

This is so even if Advanced Orthopedics never discussed the waiver issue. "[S]tatutory standing [under ERISA] is an issue of subject matter jurisdiction." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294 (3d Cir. 2007); *see also Univ. Spine Ctr. v. United Healthcare*, Civ. A. No. 17-10978, 2018 U.S. Dist. LEXIS 86201, at *4 (D.N.J. May 23, 2018) (citing *Pascack Valley Hosp., Inc. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400–01 (3d Cir. 2004)) ("[I]f plaintiff lacks standing to sue under ERISA, then the court also lacks federal subject-matter jurisdiction to hear the claim."). "A court has an 'independent obligation to determine whether subject-matter jurisdiction exists.'" *Tobia v. Lakewood Bd. of Educ.*, Civ. A. No. 16-4850, 2020 U.S. Dist. LEXIS 234236, at *8 (D.N.J. Dec. 14, 2020) (citations omitted). "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)); *see also Parker v. United States*, 131 Fed. Cl. 1, 19 (2017) ("[T]he court has the responsibility to examine all pertinent issues relevant to subject matter jurisdiction."); *Ford Motor Co. v. United States*, 635 F.3d 550, 556 (Fed. Cir. 2011) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)) ("[I]ssues implicating subject matter jurisdiction 'can never be forfeited or waived.'"). Accordingly, because the requirement of ERISA standing goes to subject matter jurisdiction, the Court has an independent obligation to consider whether BCBSAL waived the anti-assignment clause that may negate Advanced

Orthopedics' otherwise valid ERISA standing. Such a waiver issue cannot be forfeited.

### 3. The Factual Question of Whether BCBSAL Waived Anti-Assignment Clause Is Inappropriate for Resolution at this Stage

Courts in this Circuit apply state law to determine whether a party waived the anti-assignment clause in an ERISA plan. *See, e.g.*, *Somerset*, 2020 U.S. Dist. LEXIS 73174, at *15–16 (applying New Jersey law); *Am. Orthopedic*, 890 F.3d at 454 (applying Pennsylvania law); *Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 606 (D.N.J. 2011) (applying Pennsylvania law). Under the sub-heading "Governing Law," the Plan provides, in relevant part:

> To the extent ERISA is not applicable, the plan and all rights and obligations related to the plan shall be governed by, and construed in accordance with, the laws of the state of Alabama, without regard to any conflict of law principles or other laws that would result in the applicability of other state laws to the plan.

(ECF No. 12-3 at 3.) "[C]ourts in this jurisdiction have repeatedly honored choice-of-law provisions that explicitly state a particular governing law without regard to conflicts of law." *Brauser Real Estate, LLC v. Meecorp Capital Mkts., LLC*, Civ A. No. 06-1816, 2008 U.S. Dist. LEXIS 8000, at *9 (D.N.J. Feb. 4, 2008) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159 (3d Cir. 1999)). Accordingly, Alabama law may govern the waiver inquiry here. *Am. Orthopedic*, 890 F.3d at 454 & n.8 (applying Pennsylvania law in deciding whether the defendant waived the anti-assignment clause in an ERISA plan, because "insurance plan included an unambiguous Pennsylvania choice-of-law provision"); *Cohen*, 820 F. Supp. 2d at 606 (finding that, "based upon the [Pennsylvania] choice of law provision in the Plan, Pennsylvania law govern[ed]" the determination of whether the defendants "waived their right to enforce the [anti-assignment] provision through their continued course of conduct and dealings with" the plaintiff).

However, the *Somerset* court applied New Jersey law to determine whether the defendants waived an anti-assignment clause, even though the plan had the same Alabama choice of law

11

provision as here. *Somerset*, 2020 U.S. Dist. LEXIS 73174, at *15–16, and Civ. A. No. 19-8783, ECF No. 28-2 at 22. Notably, the *Somerset* court did not consider the Alabama choice of law provision. Nevertheless, the Court need not determine whether New Jersey law or Alabama law should govern the waiver inquiry here. This is because, under the laws of either state, it is inappropriate at this stage to decide whether BCBSAL waived the Plan's anti-assignment clause.

If New Jersey law governs, then the waiver inquiry will involve "factual issues . . . inappropriate for resolution on this motion to dismiss." *NJSR*, 979 F. Supp. 2d at 524. Especially, the Amended Complaint alleges BCBSAL paid reimbursement for SZ's surgery to Advanced Orthopedics, an out-of-network provider. (ECF No. 5 ¶ 6.) Such a direct payment to Advanced Orthopedics could evidence a waiver of the anti-assignment clause when the Plan, as provided in the record,[1] does not explicitly authorize BCBSAL to pay an out-of-network provider. *C.f. Kaul v. Horizon Blue Cross Blue Shield*, Civ. A. No. 15-8268, 2016 U.S. Dist. LEXIS 99322, at *7 (D.N.J. July 29, 2016) (citations omitted) ("In general, a direct payment to a healthcare provider does not constitute waiver of an anti-assignment provision where the plan at issue authorizes such payment. Here, as [p]laintiff does not contend [d]efendants' direct payment to him was unauthorized, the [c]ourt does not find [d]efendants waived the anti-assignment provisions."). This is in contrast with *Somerset*, where the plan authorized the defendant plan administrator to pay an out-of-network provider directly. *Somerset*, Civ. A. No. 19-8783, ECF No. 28-2 at 23 ("With out-of-network providers, we may choose whether to pay you or the provider."). Therefore, though the *Somerset* court declined to find that "any [d]efendant waived its rights under an anti-assignment

---

[1] There is only an excerpt of the Plan in the record. (*See* ECF No. 12-2 ¶ 4.) Therefore, at this stage, the Court cannot rule out the possibility that the remaining portions of the Plan, or other related binding documents, may authorize BCBSAL to pay Advanced Orthopedics directly. As a result, the Court cannot determine how BCBSAL's alleged direct payment to Advanced Orthopedics would affect the waiver inquiry.

clause," based on the defendant's interactions with the plaintiff out-of-network provider that were "routine and d[id] not demonstrate an intentional relinquishment of any known rights," 2020 U.S. Dist. LEXIS 73174, at *16–17 (citing *Am. Orthopedic*, 890 F.3d at 454), *Somerset*'s waiver determination may be inapposite here.

Under Alabama law, "[w]aiver is the intentional relinquishment of a known right," which "must be shown in an unequivocal manner." *Edwards v. Allied Home Mortg. Capital Corp.*, 962 So. 2d 194, 208–09 (Ala. 2007) (citations omitted). "A party's intent to waive a right may be found from conduct that is inconsistent with the assertion of that right." *Id*. at 209 (citing *Givens v. Gen. Motors Acceptance Corp.*, 324 So. 2d 277, 279 (Ala. Civ. App. 1975)). "Whether there has been a waiver is a question of fact." *Bentley Sys., Inc. v. Intergraph Corp.*, 922 So. 2d 61, 93 (Ala. 2005) (citing *Murray v. Webster*, 54 So. 2d 505 (Ala. 1951)). "[Q]uestion of fact . . . is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." *Smith v. Norfolk S. Ry. Co.*, Civ. A. No. 10-0643, 2011 U.S. Dist. LEXIS 16089, *7 n.1 (S.D. Ala. Feb. 17, 2011) (citing *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 848 (11th Cir. 2004)); *see also Grissom v. Corizon, LLC*, Civ. A. No. 19-420, 2020 U.S. Dist. LEXIS 102752, at *19 (M.D. Ala. June 11, 2020) (citing *Osterback v. Kemp*, 300 F. Supp. 2d 1238, 1256 (N.D. Fla. 2003)) ("[A] question of fact . . . is generally inappropriate to determine at the motion to dismiss stage."). Here, BCBSAL's alleged actions may indicate a waiver of the anti-assignment clause under Alabama law. Pursuant to the sentence right after the anti-assignment clause, as discussed in Part III.A.2, *supra*, BCBSAL has the right to pay covered benefits only to SZ or its in-network provider, even if SZ assigned payment of its claim to Advanced Orthopedics. However, the Amended Complaint suggests BCBSAL made a direct payment to Advanced Orthopedics, which could be inconsistent with BCBSAL's rights under the Plan, which (as provided in the current record) does not authorize such a payment. This

could amount to a waiver of the anti-assignment clause, and creates a fact question inappropriate for resolution at the pleading stage.

In conclusion, the waiver "issue is fact-intensive and cannot be settled solely in reference to one or two facts." *Atl. Orthopaedic*, 2016 U.S. Dist. LEXIS 29360, at *12. Because BCBSAL's waiver of the anti-assignment clause "is adequately suggested by the allegations of the" Amended Complaint, "and may be explored further in discovery," the Court "would need a far more complete record of the course of dealing between" the parties "[b]efore passing on the question of waiver." *Id*. at *12–13. Accordingly, BCBSAL's Motion to Dismiss the Amended Complaint "for lack of standing is denied." *Id*. at *13.

### B.     The Court Dismisses Without Prejudice Count II and Count III

BCBSAL insists Advanced Orthopedics is foreclosed from seeking reliefs under ERISA § 502(a)(3) (*i.e.*, 29 U.S.C. § 1132(a)(3)) for its breach of fiduciary duty allegations, because it has an available cause of action under ERISA § 502(a)(1)(B) (*i.e.*, 29 U.S.C. § 1132(a)(1)(B)). (ECF No. 12-1 at 17.) BCBSAL argues the relief under ERISA § 502(a)(3) is meant only to be a catch-all for situations where a claim for relief was otherwise unavailable to a participant or beneficiary under any other ERISA remedial provision. (*Id*.) BCBSAL maintains duplicative equitable reliefs and fiduciary breach claims pled under ERISA § 502(a)(3) should be dismissed at the motion to dismiss stage. (*Id*. at 18.) Advanced Orthopedics counters the equitable reliefs of surcharge, removal, and profits are unavailable under ERISA § 502(a)(1)(B). (ECF No. 18 at 14.) Advanced Orthopedics suggests it is only precluded from seeking equitable reliefs under ERISA § 502(a)(3), when a court determines it will certainly receive or actually receives adequate relief for its injuries under ERISA § 502(a)(1)(B) or some other ERISA provision. (*Id*.) Advanced Orthopedics contends discovery will reveal the extent of BCBSAL's financial interest beyond its receipt of a

*per capita* fee for claim processing, such as the profits authorized by the Administrative Services Agreement ("ASA"), which governs the relationship between BCBSAL and the Plan. (*Id*. at 16–17.) Advanced Orthopedics requests leave to file a second amended complaint to cure any identified deficiencies, if the Court grants BCBSAL's Motion to Dismiss in whole or part. (*Id.* at 17 n.6.) The Court finds the Amended Complaint is not properly pleaded to support the equitable reliefs sought by Advanced Orthopedics under ERISA § 502(a)(3) but grants Advanced Orthopedics an opportunity to cure the pleading deficiencies.

### 1. Advanced Orthopedics' Unspecified Request For Declaratory Relief Under ERISA § 502(a)(3) Should Be Dismissed

"Although the Amended Complaint states that declaratory relief is sought against" BCBSAL and VF Corporation, "the complaint does not specify the declaratory relief sought," and Advanced Orthopedics' request for declaratory relief, "therefore, shall be dismissed." *Garcia v. Corr. Med. Servs.*, Civ. A. No. 08-5652, 2010 U.S. Dist. LEXIS 39665, at *15 n.3 (D.N.J. Apr. 20, 2010); *see also Leniart v. Borchet*, Civ. A. 20-1098, 2020 U.S. Dist. LEXIS 178748, at *24 (D. Conn. Sept. 28, 2020) ("Because [the plaintiff] has not specified his request for declaratory relief, the [c]ourt cannot determine if it is plausible and will dismiss this request without prejudice."); *Esparaza v. Kuykendall*, Civ. A. No. 9:17-45, 2020 U.S. Dist. LEXIS 54470, at *12–13 (E.D. Tex. Mar. 30, 2020) (dismissing the plaintiff's request for declaratory relief, because his complaint "d[id] not specify what declaratory relief he [wa]s seeking"); *Williams v. Johnson*, Civ. A. No. 90-0474-RV-C, 1991 U.S. Dist. LEXIS 18098, at *6–7 (S.D. Ala. Sept. 26, 1991) ("The plaintiff has not specified the exact nature of the declaratory relief which he seeks. The plaintiff therefore has failed to state a claim for declaratory relief.").

### 2. Surcharge and Profits, But Not Removal, Are Appropriate Reliefs Under ERISA § 502(a)(3)

In addition to declaratory relief, Advanced Orthopedics seeks three other equitable reliefs (*i.e.*, surcharge, removal, and profits) under ERISA § 502(a)(3). As a threshold matter, the Court must determine whether the three equitable reliefs are awardable under ERISA § 502(a)(3), even if Advanced Orthopedics does not assert an ERISA § 502(a)(1)(B) claim.

The removal of a plan fiduciary is not an appropriate remedy under ERISA § 502(a)(3). *Wise v. Verizon Commc'ns. Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) ("Because removal of the ERISA fiduciary is an available remedy under §§ 1109(a) and 1132(a)(2), [the plaintiff] may not resort to this equitable catchall provision [of § 502(a)(3)] to seek the same relief."); *Barber v. Sun Life & Health Ins. Co.*, Civ. A. No. 09-163, 2010 U.S. Dist. LEXIS 162922, at *7 (D. Conn. Mar. 9, 2010) ("[B]ecause ERISA § 1132(a)(2) specifically provides for the removal of a fiduciary, . . . [the plaintiff] cannot seek to remove [the defendant] as a fiduciary as 'other equitable relief' pursuant to § 1132(a)(3)."); *Cross v. Fleet Reserve Ass'n Pension Plan*, Civ. A. No. 05-0001, 2006 U.S. Dist. LEXIS 98424, at *7 (D. Md. Dec. 18, 2006) ("[R]emoval[] is not an 'appropriate equitable remedy' for redressing the non-payment of benefits to plaintiffs suing on their own behalf or that of 'similarly situated participants' under § 502(a)(3)."); *Reid v. Gruntal & Co.*, 763 F. Supp. 672, 666 (D. Me. 1991) (finding that "removal of the fiduciary" was not a remedy authorized under ERISA § 502(a)(3), which "must do more than provide the same remedies for breach of fiduciary duty as does section 1132(a)(2)"). Therefore, ERISA § 502(a)(3) cannot be the legal basis for Advanced Orthopedics to seek removal of BCBSAL as a fiduciary.

In contrast, "[t]he surcharge remedy . . . fall[s] within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011). The remedy "extend[s] to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id*. "[A] fiduciary can be surcharged under § 502(a)(3) only upon a

showing of actual harm" of a plan participant or beneficiary, which may "consist of detrimental reliance" or "come from the loss of a right protected by ERISA or its trust-law antecedents." *Id*. at 444; *see also Horan v. Reliance Std. Life Ins. Co.*, Civ. A. No. 12-7802, 2014 U.S. Dist. LEXIS 11427, at *33 (D.N.J. Jan. 30, 2014) (citations omitted) ("Plaintiff may seek a surcharge as an equitable remedy under §1132(a)(3) if [p]laintiff can demonstrate in fact that [the defendant] breached its fiduciary duty to [p]laintiff and [the plan member] and that the breach caused them damages.").

As for profits, if the relief is essentially one for disgorgement of an ERISA fiduciary's ill-gotten gains, then it is awardable under ERISA § 502(a)(3).[2] *Gramm v. Bell Atl. Mgmt. Pension Plan*, 983 F. Supp. 585, 593 (D.N.J. 1997) (citations omitted) ("Section 1132(a)(3) authorizes a court to award only traditional forms of equitable relief, such as an injunction or an order providing for the restitution of ill-gotten gains from a breach of fiduciary duty."); *see also Bd. of Trs. of the Greater Pa. Carpenters' Med. Plan v. Clouser*, Civ. A. No. 19-165, 2020 U.S. Dist. LEXIS 54631, at *5–6 (W.D. Pa. Mar. 30, 2020) (citations omitted) (finding that the "[p]laintiff was entitled to recovery under ERISA § 502(a)(3)" in the form of "restitution of ill-gotten plan assets or profits"); *DeSue v. Aetna Life Ins. Co.*, Civ. A. No. 16-1646, 2017 U.S. Dist. LEXIS 18526, at *10 (W.D. Pa. Feb. 9, 2017) (citing *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013)) ("[D]isgorgement . . . is a classic form of equitable relief designed 'to deprive[] wrongdoers of ill-gotten gains,' [which] may be recovered under § 1132(a)(3)."); *In re Blue Cross of W. Pa. Litig.*, 942 F. Supp. 1061, 1066 (W.D. Pa. 1996) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252

---

[2] As discussed in Part III.B.4, *infra*, Advanced Orthopedics' brief seems to suggest, by requesting the relief for profits, it is seeking disgorgement of BCBSAL's ill-gotten gains from its alleged fiduciary breach. Advanced Orthopedics should further clarify the nature of its requested relief for profits in a second amended complaint.

(1993)) ("[A] plaintiff, under Section 1132(a)(3) may seek injunctive relief or restitution of ill-gotten plan assets or profits.").

Accordingly, ERISA § 502(a)(3) could be the legal basis for Advanced Orthopedics to seek surcharge and disgorgement, but not removal.

### 3. The Equitable Reliefs Advanced Orthopedics Seeks Under ERISA § 502(a)(3) Could Be Non-Replicative of an ERISA § 502(a)(1)(B) Claim

"Section 502(a)(3) of ERISA, the vehicle for [p]laintiff's fiduciary duty claim, is a general catchall provision[ that] . . . act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Shah v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 15-8590, 2016 U.S. Dist. LEXIS 113556, at *25 (D.N.J. Aug. 25, 2016) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 490 (1996)) (internal quotations omitted). "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Id.* at *25–26 (*Varity*, 516 U.S. at 515). "Plaintiffs may not seek identical relief under subsection (a)(3) merely to avoid the legal framework of subsection (a)(1)(B)." *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 298–99 (D.N.J. 2013) (citing *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006)).

"There is a split among circuits and within this district as to the effect of *Varity* . . . on a plaintiff's ability to simultaneously pursue claims for benefits under § 502(a)(1)(B) and for breach of fiduciary duty under § 502(a)(3)." *Shah*, 2016 U.S. Dist. LEXIS 113556, at *26 (citing *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 575 (D.N.J. 2008)). Some courts find it appropriate to dismiss a claim or relief based on ERISA § 502(a)(3) for being duplicative of a claim for benefits due under ERISA § 502(a)(1)(B). *See, e.g.*, *Laufenberg v. Ne. Carpenters Pension Fund*, Civ. A. No. 17-1200, 2019 U.S. Dist. LEXIS 218140, at *32–33 (D.N.J. Dec. 18,

2019) (citations omitted) ("[W]here the claim for 'appropriate equitable relief' pursuant to Section 502(a)(3) is duplicative of a claim for benefits due under Section 502(a)(1)(B), some courts have dismissed the Section 502(a)(3) claim at [the pleading] stage of the litigation as redundant."); *Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, Civ. A. No. 17-2055, 2018 U.S. Dist. LEXIS 90422, at *39 (D.N.J. May 31, 2018) ("[D]ismissal of [p]laintiff's § 502(a)(3) claim is warranted, [when it] is wholly duplicative of [an ERISA § 502(a)(1)(B) claim], in that it is based on the same conduct and seeks relief otherwise available under [§ 502(a)(1)(B)]."); *see also Benson v. Tiffany & Co.*, Civ. A. No. 20-1289, 2021 U.S. Dist. LEXIS 88767, at *38 (S.D.N.Y. May 10, 2021) ("Plaintiffs['] alleged harms can be compensated by money damages and [p]laintiff has not sought any equitable relief that would distinguish her § 502(a)(3) claim from her § 502(a)(1)(B) claim. For these reasons, the [c]ourt dismisses [p]laintiffs['] breach of fiduciary claims brought under § 502(a)(3)."). Other courts find such a dismissal premature at the pleading stage. *See, e.g.*, *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 16-9253, 2017 U.S. Dist. LEXIS 134021, at *11 (D.N.J. Aug. 22, 2017) (citing *Shah v. Aetna*, Civ. A. No. 17-195, 2017 U.S. Dist. LEXIS 104750, at *5 (D.N.J. July 6, 2017)) ("At [the pleading] stage, the [c]ourt cannot state with certainty the precise nature of [the plaintiff's] injuries or the appropriateness of any particular remedy, and thus cannot determine whether its claim under Section 502(a)(3) is coterminous with its claim under Section 502(a)(1)(B)."); *Shah*, 2016 U.S. Dist. LEXIS 113556, at *27–28 (citing *Bell v. Guardian Life Ins. Co.*, Civ. A. No. 08-01629, 2008 U.S. Dist. LEXIS 90921, at *9 (D.N.J. Nov. 6, 2008)) ("[D]ismissal is premature 'until it can be determined if [p]laintiff can and will succeed on claims asserted under § 1132(a)(1).' . . . At the pleadings stage, [p]laintiff may 'plead alternative causes of action under § 502(a)(1)(B) and § 502(a)(3).'"); *see also Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) ("At the

pleading stage, it is difficult to determine if relief is indeed owed under § 1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose the plaintiff from bringing a better case pursuant to § 1132(a)(3).”). Here, the Court need not make a decision on the split. This is because, as illustrated below, the equitable reliefs sought by Advanced Orthopedics under ERISA § 502(a)(3) could be non-duplicative of an ERISA § 502(a)(1)(B) claim.

"Courts have strictly construed the language in § 502(a)(1)(B), limiting recovery to benefits due under the terms of the plan." *Santasania v. Union Trowel Trades Benefit Funds*, Civ. A. No. 01-1442, 2003 U.S. Dist. LEXIS 1503, at *7 (M.D. Pa. Feb. 4, 2003) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see also A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 917 (D. Or. 2016) (“[A] Section 1132(a)(1)(B) claim does not permit an award that exceeds the amount of benefits due under a plan.”); *Zimmerman v. Sloss Equip.*, 72 F.3d 822, 828 (10th Cir. 1995) (citations omitted) (“[N]othing in section 502(a)(1)(B) supports damages beyond that section’s language authorizing recovery of ‘benefits due . . . under the terms of the plan.’”). In contrast, “[b]eyond benefits due under the terms of a plan, section 502(a)(3)(B) of ERISA permits a beneficiary of an ERISA plan to sue for ‘other appropriate equitable relief.’” *Brookens v. GMC*, Civ. A. No. 07-387, 2008 U.S. Dist. LEXIS 50187, at *8–9 (D. Del. July 1, 2008) (citing 29 U.S.C. § 1132(a)(3)(B)); *see also Theo M. v. Beacon Health Options*, Civ. A. No. 19-364, 2020 U.S. Dist. LEXIS 166903, at *22 (D. Utah Sept. 11, 2020) (citing *Varity*, 516 U.S. at 489) (“[W]hile relief under Section 502(a)(3) is not limited in scope to violations of rights due under a plaintiff’s plan, the same cannot be said of relief sought under Section 502(a)(1)(B).”); *Steelman v. Prudential Ins. Co. of Am.*, Civ. A. No. 06-2746, 2007 U.S. Dist. LEXIS 52063, at *17 (E.D. Cal. July 5, 2007) (“Under Section 502(a)(3), however, there is no restriction limiting plaintiffs to suit for ‘benefits due.’”). Therefore, “in some cases, the relief provided by another section of ERISA, such as §

1132(a)(1)(B), will be inadequate, and additional equitable relief under § 1132(a)(3) will be necessary." *Parente v. Bell Atl.*, Civ. A. No. 99-5478, 2000 U.S. Dist. LEXIS 4851, at *10 (E.D. Pa. Apr. 17, 2000); *see also Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (citing *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–42 (6th Cir. 2007)) (concluding that "[a] claimant can pursue a breach-of-fiduciary-duty claim under § 502(a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § 502(a)(1)(B)," if "the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate"). Therefore, the Court must ascertain whether the equitable reliefs sought by Advanced Orthopedics under ERISA § 502(a)(3) are based on injuries beyond the benefits due or otherwise irremediable under ERISA § 502(a)(1)(B). If so, Advanced Orthopedics may pursue these reliefs simultaneously with an ERISA § 502(a)(1)(B) claim.

The reliefs of surcharge and disgorgement under ERISA § 502(a)(3), as well as removal of fiduciaries under ERISA § 502(a)(2), could be non-duplicative of an ERISA § 502(a)(1)(B) claim. *See DeSue*, 2017 U.S. Dist. LEXIS 18526, at *9, 13 (finding that the relief of "restitution or surcharge to" (1) "disgorge [d]efendants' unjust enrichment in wrongfully delaying and denying benefits," and (2) "make [the plaintiff] whole for losses"—such as the "harm suffered for the delay in getting medical treatment, the loss of income and interest incurred on loans to pay for basic living expenses, the loss of retirement savings, loss of life insurance"—could be "available under § 1132(a)(3) but not under § 1132(a)(1)(B)");[3] *see also Chavis v. Plumbers & Steamfitters Loc.*

---

[3] The *DeSue* court, at the pleading stage, allowed the plaintiff to pursue the surcharge relief under ERISA § 502(a)(3) simultaneously with an ERISA § 502(a)(1)(B) claim. *Id*. at *12. Though the *DeSue* plaintiff was not allowed to pursue the disgorgement relief, it was because the plaintiff failed to show that the defendants "unlawfully profited from the alleged breach of fiduciary duty, such that they should be required to disgorge any 'ill-gotten gains.'" *Id*. (citing *Edmonson*, 725

*486 Pension Plan*, Civ. A. No. 17-2729, 2018 U.S. Dist. LEXIS 144102, at *24–30 (D. Md. Aug. 23, 2018) (allowing the plaintiff, at the pleading stage, to proceed with "a claim under § 502(a)(1)–(2) for denial of benefits" simultaneously with "claims under § 502(a)(2)" for "removal of a fiduciary"); *Berman v. Microchip Tech. Inc.*, Civ. A. No. 17-1864, 2018 U.S. Dist. LEXIS 20280, at *36 (N.D. Cal. Feb. 6, 2018) ("[U]nlike the relief available under section 502(a)(1)(B), surcharge would provide [p]laintiffs with a remedy for other losses caused by [d]efendants' alleged breach of fiduciary duty, beyond the amount of benefits allegedly withheld."); *George v. CNH Health & Welfare Ben. Plan*, Civ. A. No. 16-1678, 2017 U.S. Dist. LEXIS 77437, at *10–11 (E.D. Wis. May 22, 2017) (declining to dismiss "[p]laintiffs' equitable claims for disgorgement or removal of fiduciaries" as "duplicative remedies for a single injury" of "the denial of benefits"); *Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1050 (N.D. Cal. 2016) (finding that "at the motion to dismiss stage . . . [p]laintiff's requests for disgorgement, surcharge, and other make-whole relief under § 502(a)(3)" were not "adequately remedied elsewhere under ERISA," because "[p]laintiff allege[d] that in addition to wrongfully denying [p]laintiff's . . . benefits, [d]efendant engaged in a pattern and practice of denying legitimate claims to maximize profits," and caused "[p]laintiff's injuries such as his loss of employment and increased benefit costs"); *A.F.*, 157 F. Supp. 3d. at 920 (citations and internal quotations omitted) ("[W]here, as here, a plan participant bring[s] suit against a plan fiduciary . . . for breach of fiduciary duty relating to the terms of a plan, . . . surcharge . . . constitutes equitable relief under Section 1132(a)(3) . . . .

F.3d at 418). Among the equitable reliefs requested by the plaintiff under ERISA § 502(a)(3), the *DeSue* court found only the request "to enjoin the plan administrator from improperly refusing to pay benefits in the future" was "available under § 1132(a)(1)(B)," so that the plaintiff "need not resort to § 1132(a)(3) to obtain it." *Id.* at *11 (citing *Russell*, 473 U.S. at 146–47). In other words, if the *DeSue* plaintiff adequately alleged the defendants unlawfully profited from a breach of fiduciary duty, it could pursue the disgorgement relief under ERISA § 502(a)(3) simultaneously with an ERISA § 502(a)(1)(B) claim.

[R]eimbursement under Section 1132(a)(1)(B) does not provide them with adequate relief to remedy [the plan fiduciary's] breach of fiduciary duty."); *Neaton v. Hartford Life & Accident Ins. Co.*, Civ. A. No. 09-213, 2014 U.S. Dist. LEXIS 205221, at *11, 17 (E.D. Tenn. July 1, 2014) (concluding that the "relief under § 502(a)(1)(B) [wa]s not adequate, and therefore, [p]laintiff may seek simultaneous relief under § 502(a)(3)" in the form of "surcharge . . . to prevent a fiduciary's unjust enrichment"). The Court is aware of *Rochow*, which found:

> Allowing [the plan member] to recover disgorged profits under § 502(a)(3), in addition to his recovery under § 502(a)(1)(B), based on the claim that the wrongful denial of benefits also constituted a breach of fiduciary duty, would—absent a showing that the § 502(a)(1)(B) remedy is inadequate—result in an impermissible duplicative recovery.

*Rochow*, 780 F.3d at 371. But *Rochow* does not conflict with the above analysis, because it does not prevent a plaintiff from seeking reliefs under ERISA § 502(a)(3) when the ERISA § 502(a)(1)(B) remedy is inadequate to make whole for the plaintiff's alleged injuries.

Therefore, the equitable reliefs of surcharge, disgorgement, and removal "are not necessarily duplicative" of an ERISA § 502(a)(1)(B) claim for denial of benefits. *DeSue*, 2017 U.S. Dist. LEXIS 18526, at *13. If the factual and legal bases for such equitable reliefs are properly pleaded in the Amended Complaint, "the Court will allow the claim for breach of fiduciary duty to proceed, along with the claim for denial of benefits, at least at this juncture." *Id*.

### 4. The Amended Complaint Is Not Properly Pleaded to Support the Equitable Reliefs Advanced Orthopedics Seeks Under ERISA § 502(a)(3)

The Amended Complaint is not properly pleaded to support any of the reliefs Advanced Orthopedics' seeks for Count II and Count III. First, as explained in Part III.B.2, *supra*, ERISA § 502(a)(3) cannot be the legal basis for Advanced Orthopedic to pursue the removal relief. Second, the Amended Complaint contains no factual allegation of any actual losses sustained by Advanced

Orthopedics beyond the benefits due or otherwise irremediable under ERISA § 502(a)(1)(B), as required to pursue the surcharge relief. Third, the Amended Complaint does not mention any ill-gotten gains of BCBSAL (under Count II) or VF Corporation (under Count III) from its alleged fiduciary breach, as required to pursue the disgorgement relief. Indeed, Advanced Orthopedics states in its brief that the ASA requires the Plan to pay BCBSAL a percentage of every dollar it saves in paying claims (ECF No. 18 at 16–17), which may constitute BCBSAL's ill-gotten gains. *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 101 (3d Cir. 2012) (citation omitted) ("[R]estitution of ill-gotten commissions is an equitable remedy. . . . [W]here a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary."). But such "a statement in a brief will not amend a deficient complaint." *Thomas v. Youderian*, 232 F. Supp. 3d 656, 670 n.9 (D.N.J. 2017) (citations omitted). Fourth, as discussed in Part III.B.1, *supra*, Advanced Orthopedics' request for declaratory relief is unspecified and therefore inviable.

Nevertheless, the Court grants Advanced Orthopedics' application to file a second amended complaint to address these pleading deficiencies, which can be cured by an amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."); *see also Johns v. Nunn*, Civ. A. No. 04-0624, 2005 U.S. Dist. LEXIS 28906, at *8 (D.N.J. Nov. 17, 2005) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("[C]ourts [should] permit amending freely to afford plaintiffs the opportunity to test claims on the merits.").

Accordingly, the Court dismisses without prejudice the Amended Complaint as to Count

II and Count III,[4] pursuant to Rule 12(b)(6). Advanced Orthopedics has 30 days to file a second amended complaint.

## IV. CONCLUSION

For the reasons set forth above, BCBSAL's Motion to Dismiss is **GRANTED in part and DENIED in part**. The Court dismisses without prejudice the Amended Complaint as to Count II and Count III pursuant to Rule 12(b)(6). The remaining portions of the motion are **DENIED**. An appropriate order follows.


Date: May 28, 2021                           */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**

---

[4] BCBSAL does not move to dismiss Count III. The Court is exercising its power to dismiss Count III *sua sponte*. *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) (citing *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980)) ("The [d]istrict [c]ourt has the power to dismiss claims *sua sponte* under Rule 12(b)(6).").